**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EVANGELINE WARD,<br><br>Plaintiff,<br><br>v.<br>ON DECK CAPITAL, INC., NOAH BRESLOW, DANIEL S. HENSON, CHANDRA DHANDAPANI, BRUCE P. NOLOP, MANOLO SANCHEZ, JANE J. THOMPSON, RONALD F. VERNI, and NEIL E. WOLFSON,<br><br>Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

1. This action concerns a proposed transaction announced on July 28, 2020, pursuant to which On Deck Capital, Inc. ("On Deck" or "the Company") will be acquired by Enova International, Inc. ("Enova").

2. On July 28, 2020, On Deck's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"), pursuant to which On Deck's shareholders will receive 0.092 shares of Enova common stock and $0.12 in cash per share of On Deck stock owned (the "Merger Consideration").

3. On September 8, 2020, in order to convince On Deck's stockholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete

and misleading proxy statement (the "Proxy") with the United States Securities and Exchange Commission ("SEC").

4. The Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

5. In addition, the Proxy disclosed that a special meeting of On Deck stockholders will be held on October 7, 2020 at 10:00 a.m. EST to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so On Deck stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

**JURISDICTION & VENUE**

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and

wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NYSE, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of On Deck common stock.

10. Defendant On Deck is a Delaware corporation and a party to the Merger Agreement. On Deck common stock is traded on the NYSE under the ticker symbol "ONDK."

11. Defendant Noah Breslow is Chief Executive Officer and Chairman of the Board of the Company.

12. Defendant Daniel S. Henson is a director of the Company.

13. Defendant Chandra Dhandapani is a director of the Company.

14. Defendant Bruce P. Nolop is a director of the Company.

15. Defendant Manolo Sanchez is a director of the Company.

16. Defendant Jane J. Thompson is a director of the Company.

17. Defendant Ronald F. Verni is a director of the Company.

18. Defendant Neil E. Wolfson is a director of the Company.

## FACTS

19. On Deck is a small business lender. Founded in 2006, the Company uses data analytics and digital technology to make real-time lending decisions and deliver financing rapidly to small businesses online. On Deck offers a wide range of term loans and lines of credit customized for the needs of small business owners. Since inception, OnDeck has provided over

$13 billion in loans to customers in 700 different industries across the United States, Canada and Australia.

20. Enova is a technology and analytics company focused on providing online financial services. In 2019, Enova extended approximately $2.2 billion in credit or financing to borrowers. As of June 30, 2020, Enova offered or arranged loans or draws on lines of credit to consumers in 40 states in the United States and Brazil. Enova also offers financing to small businesses in all 50 states and Washington D.C. in the United States. Enova uses its proprietary technology, analytics and customer service capabilities to quickly evaluate, underwrite and fund loans or provide financing, allowing it to offer consumers and small businesses credit or financing. Enova's customers include consumers who and small businesses that have bank accounts but use alternative financial services because of their limited access to more traditional credit from banks, credit card companies and other lenders. Enova was an early entrant into online lending, launching its online business in 2004, and through June 30, 2020, it has completed over 52 million customer transactions and collected more than 37 terabytes of currently accessible customer behavior data, allowing it to better analyze and underwrite its specific customer base. Enova has significantly diversified its business over the past several years having expanded the markets it serves and the financing products it offers. These financing products include installment loans and receivables purchase agreements and line of credit accounts.

21. On July 28, 2020, On Deck's Board caused the Company to enter into the Merger Agreement.

22. According to the press release announcing the Proposed Transaction:

> **CHICAGO and NEW YORK – July 28, 2020** – Enova International (NYSE: ENVA) and OnDeck® (NYSE: ONDK), today announced that they have entered

into a definitive agreement under which Enova will acquire all outstanding shares of OnDeck in a cash and stock transaction valued at approximately $90 million. The implied price of $1.38 per OnDeck share reflects a 43.6% premium to its 90-day volume weighted average price and a 90.4% premium based on the closing price of $0.73 per OnDeck share on July 27, 2020.

This transaction brings together two complementary, market-leading businesses combining world-class capabilities in consumer and small business online lending. Enova and OnDeck are both innovators that have helped revolutionize online lending, using data and advanced analytics to simplify and expand access to financial services for underserved borrowers, while providing an unparalleled customer experience. Enova will add the OnDeck brand, products and services to its existing industry-leading portfolio to create a combined company with significant scale and diverse product offerings in consumer and small business market segments that banks and credit unions have difficulty serving. Together, Enova and OnDeck had $4.7 billion in originations in 2019 and have served approximately 7 million customers.

"This strategic transaction, which brings together two FinTech leaders, is a great opportunity for customers, employees and shareholders of both companies," said David Fisher, CEO of Enova. "Together, our companies will be stronger because of the complementary strengths and synergies of our businesses. Acquiring a premier online small business lender and its ODX bank platform, and welcoming its innovative and talented team to Enova, will increase our scale and resources, providing us with opportunities to accelerate growth in our increasingly diversified portfolio as we continue to execute on our strategy to create long-term value for all of our stakeholders."

Noah Breslow, OnDeck Chairman and CEO said, "I am proud of the business we have built and the more than $13 billion of financing we have provided to underserved small businesses since our founding in 2006. Following an extensive review of our strategic options, we believe this is the right path forward for our customers, employees and shareholders. Joining forces with Enova, a highly-respected and well-capitalized leader in online lending, and leveraging our combined scale and strengths, provides the best opportunity for our long-term success."

***

**Transaction Details**

The transaction is valued at approximately $90 million, of which $8 million will be paid in cash. Under the terms of the agreement, OnDeck shareholders will

receive $0.12 cents per share in cash and 0.092 shares of Enova common stock for each share of OnDeck held.

Upon completion of the transaction, OnDeck shareholders will own approximately 16.7% of the combined entity, with Enova shareholders owning approximately 83.3%.

The transaction has been unanimously approved by the boards of directors of both companies and is subject to OnDeck shareholder approval and HSR approval, along with customary closing conditions. The transaction is expected to close this year.

**Board and Management**

Mr. David Fisher will continue to lead the combined company. Mr. Noah Breslow will join the company as Vice Chairman and serve on the Enova management team.

**Advisors**

Jefferies LLC is acting as exclusive financial advisor to Enova, and Vedder Price P.C. is acting as its legal advisor. Evercore is acting as financial advisor to OnDeck and Kirkland & Ellis LLP is acting as its legal advisor.

23. The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

24. It is therefore imperative that the Company common stockholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

25. Section 5.5 of the Merger Agreement provides for a "no solicitation" clause that prevents On Deck from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

(a) *No Solicitation*. From the date of this Agreement until the earlier of the

Effective Time and the valid termination of this Agreement pursuant to and in accordance with Article VIII, except as otherwise set forth in this Section 5.5, the Company shall not, and shall cause its Subsidiaries and its and their respective directors and officers not to and shall use its reasonable best efforts to cause its and its Subsidiaries' respective non-officer employees, investment bankers, attorneys, consultants, accountants and other advisors or representatives (collectively, "**Representatives**") not to, directly or indirectly:

(i) solicit, initiate or take any action to knowingly facilitate or knowingly encourage or knowingly induce the submission of any Acquisition Proposal or any proposal or inquiry that would reasonably be expected to lead to an Acquisition Proposal;

(ii) enter into or participate in any discussions or negotiations with, furnish any non-public information relating to the Company or any of its Subsidiaries to, provide or afford access to the business, properties, assets, books or records of the Company or any of its Subsidiaries to, any third party that the Company knows or should reasonably be expected to know is seeking to make, or has made, an Acquisition Proposal or any inquiry or proposal that would reasonably be expected to lead to an Acquisition Proposal (except to notify such Person as to the existence of the provisions of this Section 5.5);

(iii) (A) withdraw or qualify, amend or modify in any manner adverse to Parent, the Company Board Recommendation, (B) fail to include the Company Board Recommendation in the Proxy Statement/Prospectus, (C) recommend, adopt or approve or publicly propose to recommend, adopt or approve any Acquisition Proposal or enter into or approve, recommend or declare advisable for the Company or any of its Subsidiaries to execute or enter into, any agreement, letter of intent, understanding, agreement in principle or other similar arrangement (other than an Acceptable Confidentiality Agreement) in connection with any Acquisition Proposal or (D) fail to recommend against any Acquisition Proposal or reaffirm without qualification the Company Board Recommendation in a statement complying with Rule 14e-2(a) under the Exchange Act, in each case with regard to an Acquisition Proposal that is a tender or exchange offer, by the close of business on the 10th Business Day after the commencement of such Acquisition Proposal under Rule 14d-2 (any of the foregoing in this clause (iii), a "**Company Board Recommendation Change**"); or

(iv) take any action to make any "moratorium", "control share acquisition", "fair price", "supermajority", "affiliate transactions" or "business combination statute or regulation" or other similar anti-takeover laws and regulations under applicable Law inapplicable to any third party or any Acquisition Proposal; or

(v) resolve, authorize, legally commit or publicly propose to do any of the foregoing.

26. In addition, Section 8.3 of the Merger Agreement requires On Deck to pay a

$2,800,000 termination fee to Enova in the event this agreement is terminated by On Deck and improperly constrains the Company from obtaining a superior offer.

27. Defendants filed the Proxy with the SEC in connection with the Proposed Transaction. As alleged herein, the Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading.

28. First, the Proxy omits material information regarding On Deck's and Enova's financial projections.

29. With respect to the On Deck's financial projections, the Proxy fails to disclose all line items used to calculate EBITDA.

30. With respect to the Enova's financial projections, the Proxy fails to disclose all line items used to calculate EBITDA.

31. The disclosure of projected financial information is material information necessary for On Deck's stockholders to gain an understanding of the basis for any projections as to the future financial performance of the company. In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the Company's financial advisors rendered in support of any fairness opinion.

32. Second, the Proxy omits material information regarding the analysis performed by the Company's financial advisor Evercore Group L.L.C. ("Evercore") in connection with the Proposed Transaction.

33. With respect to Evercore's *Selected Public Company Trading Analysis* for On Deck, the Proxy fails to disclose the individual multiples and metrics for the companies observed by Evercore in the analysis. This information must be disclosed to make the Proxy not materially misleading to On Deck stockholders and provide stockholders with full and

relevant information in considering how to vote.

34. With respect to Evercore's *Dividend Discount Model Analysis* for On Deck, the Proxy fails to disclose (i) potential dividends; (ii) terminal values; (iii) estimated total assets, tangible common equity, and net income; (iv) Evercore's basis for applying a range of price to NTM net income multiples of 4.0x to 8.0x; and (v) the individual inputs and assumptions underlying the range of discount rates from 14% to 18%. This information must be disclosed to make the Proxy not materially misleading to On Deck stockholders and provide stockholders with full and relevant information in considering how to vote.

35. With respect to Evercore's *Equity Research Analyst Price Targets* for On Deck, the Proxy fails to disclose (i) the price targets reviewed by Evercore and (ii) the sources of those price targets. This information must be disclosed to make the Proxy not materially misleading to On Deck stockholders and provide stockholders with full and relevant information in considering how to vote.

36. With respect to Evercore's *Contribution Analysis*, the Proxy fails to disclose (i) the Wall Street analyst estimates relied on and (ii) the source of those estimates. This information must be disclosed to make the Proxy not materially misleading to On Deck stockholders and provide stockholders with full and relevant information in considering how to vote.

37. With respect to Evercore's *Selected Public Company Trading Analysis* for Enova, the Proxy fails to disclose the individual multiples and metrics for the companies observed by Evercore in the analysis. This information must be disclosed to make the Proxy not materially misleading to On Deck stockholders and provide stockholders with full and relevant information in considering how to vote.

38. With respect to Evercore's *Dividend Discount Model Analysis* for Enova, the Proxy fails to disclose (i) potential dividends; (ii) terminal values; (iii) estimated total assets, tangible common equity, and net income; (iv) Evercore's basis for applying a range of price to NTM net income multiples of 4.0x to 8.0x; and (v) the individual inputs and assumptions underlying the range of discount rates from 14% to 18%. This information must be disclosed to make the Proxy not materially misleading to On Deck stockholders and provide stockholders with full and relevant information in considering how to vote.

39. With respect to Evercore's *Equity Research Analyst Price Targets* for Enova, the Proxy fails to disclose (i) the price targets reviewed by Evercore and (ii) the sources of those price targets. This information must be disclosed to make the Proxy not materially misleading to On Deck stockholders and provide stockholders with full and relevant information in considering how to vote.

40. With respect to Evercore's *Illustrative Price to Tangible Book Value Analysis* for Enova, the Proxy fails to disclose the basis for applying a price to TBVPS multiple reference range of 2.50x to 4.50x. This information must be disclosed to make the Proxy not materially misleading to On Deck stockholders and provide stockholders with full and relevant information in considering how to vote.

41. Third, the Proxy fails to disclose the circumstances under which Evercore will be paid the "additional fee in an amount not to exceed $1 million," and whether defendants intend to pay Evercore such fee.

42. Full disclosure of investment banker compensation and all potential conflicts is material information stockholders of On Deck are entitled to receive in deciding what weight to place on the opinions and roles played by the investment banks in the Proposed Transaction.

43. The omission of the above-referenced material information renders the Proxy false and misleading.

44. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47. Defendants issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

48. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but

failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders as required.

49. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy. Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

50. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

**COUNT II**

**(AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

52. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and

control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

55. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9,

by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: September 17, 2020

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com
*Attorneys for Plaintiff*